WESTERN & ATLANTIC RAILROAD CO. *v.* EARWOOD.

A voluntary promise by a conductor to aid a passenger in getting off of a railroad-car at a certain station does not impose upon the company any liability for a failure of the conductor, after reaching such station, to enter the car and assist the passenger from her seat to the place of exit from such car, where it does not appear that the conductor has any notice of any condition or circumstances of the passenger that would render such assistance necessary.

Argued February 15, — Decided April 12, 1898.

Action for damages. Before Judge Fite. Gordon superior court. February term, 1897.

The petition alleges, that on September 6, 1895, petitioner's husband purchased a ticket of the railroad company for her transportation from Cartersville to Calhoun, paying therefor 90 cents. She was young, and had never traveled on cars before. She had recently been confined, and was then well with an infant in her arms. Through anxiety for her welfare her husband

accompanied her on the train from Cartersville to an intermediate point, and requested the conductor, when he collected the ticket, to be kind enough to see and aid plaintiff off the car at Calhoun, which the conductor agreed and promised to do, which also he was bound to do. Instead of discharging her at the depot in Calhoun, the usual and appointed place for the discharge of passengers, defendant carried her past said usual place to a point about 1,000 yards from the depot, and there put her off. She did not know what to do, but quietly obeyed the conductor's command to get off, and did so at a distance of nearly a mile from the house of her brother where she was going, and in so doing, excited by the conduct and sayings of the conductor, who was abruptly saying to her that she should have got off at Calhoun, and on account of the distance from the car-steps to the ground, the necessity of walking so far after such recent confinement produced an injury to her womb from which she has been and still is suffering great pain, and was forced to employ physicians; all to her damage in the sum of $15,000. Defendant pleaded, that the train stopped a sufficient length of time in Calhoun to allow plaintiff to leave it; that a suitable place was provided at the station for passengers to leave the train, and it was through no fault of defendant that plaintiff did not leave it at the station, which was the regular stopping-place for passengers to disembark; that when the station was reached it was so announced by defendant's train-crew, and the train stopped a sufficient length of time for all passengers who intended getting off there to do so, and the failure of plaintiff so to get off was through her own neglect, and through no fault of the defendant.

There was a verdict in the plaintiff's favor for $400, and defendant's motion for a new trial was overruled. The motion alleged, among other grounds, that the court erred in the following charge to the jury: "If you believe from a preponderance of the evidence in this case, that the conductor in charge of the train agreed with the plaintiff, at the instance and request of her husband, that he would attend to and see the plaintiff with her infant child safely off the train at Calhoun, the point of her destination, and that the plaintiff relied on

said agreement and waited in the train with her infant child, after the arrival at Calhoun, for said conductor to come and help her with her infant child off the train, and said conductor failed to do so, but took her some distance beyond the depot in Calhoun where the defendant usually discharges its passengers, and put her off the train and thereby caused plaintiff to walk a greater distance than she would have had to walk had she been put off in the depot in Calhoun, and that she was thereby injured, the plaintiff would be entitled to recover damages against the railroad company for the injury sustained, to such an amount as you may consider just and right under the circumstances and the law given you in charge by the court."

For the other material facts see the opinion.

*Payne & Tye, R. J. & J. McCamy* and *O. N. Starr*, for plaintiff in error. *W. R. Rankin* and *W. H. Dabney*, contra.

SIMMONS, C. J. "It is undoubtedly the duty of a railway company to provide suitable and safe means for entering and alighting from its trains. But having done this, and having stopped its train in proper position to enable passengers to avail themselves of those means in entering or alighting, it is not bound to render them personal assistance. The contract of the carrier is that he will carry the passenger safely and in a proper carriage, and afford him convenient and safe means for entering and alighting from the vehicle in which he carries him, but he does not contract to render him personal service or attention beyond that." In the argument here, this rule was not disputed by the defendant in error, but it was insisted that the facts of the case showed that it was not applicable, because the conductor promised the husband of the defendant in error that when she had arrived at her destination he would "help [her] off" of the train. It was insisted that this was a contract or promise on the part of the company, which would bind it in case the conductor failed or refused to comply with it. We think that, under the facts disclosed by the record, it was nothing more than a mere voluntary promise by the conductor, and that it did not bind the company so as to subject it to damages upon the conductor's failure to comply with it. *Nunn*

v. *Georgia R. Co.*, 71 *Ga.* 710; *Daniels* v. *W. & A. R. Co.*, 96
*Ga.* 786. It will be observed by reading the evidence of the
husband and that of the wife, that they merely requested the
conductor to assist the wife in alighting from the train. This,
as an act of courtesy, he promised to do. Nowhere in the
record is it shown or alleged that any particular reason was
given the conductor why the wife needed assistance. He was
not informed, and testifies that he did not know, that she was
sick or in need of assistance on account of physical infirmity.
Had he been so informed, perhaps the company would have
been liable in the event of a failure on his part to carry out his
promise. A knowledge of the wife's condition might have im-
posed upon the company the duty of rendering her the assist-
ance promised. Hutch. Car. (2d ed.) §§ 617a, 670; 2 Shear. &
Redf. Neg. (5th ed) § 510. No reason of this kind was given
the conductor; and inasmuch as it is not the duty of the serv-
ants of a railroad company generally to assist passengers to
alight from the train, a promise by a conductor to assist a pas-
senger who is not known to him to be sick, infirm, or in need
of assistance, is a mere voluntary promise for which the com-
pany is not responsible and by which it is not bound. It is
true that in this case the wife had been recently confined and
had with her a young baby three or four weeks old, and a small
basket containing the clothing of the infant; but she testified
that when she entered the train she was well. Neither she nor
her husband, who made part of the journey with her, informed
the conductor that she needed assistance in going from her seat
in the car to the platform. Besides, if the alleged contract or
promise is strictly construed, it would appear that the promise
of the conductor was, not to assist her from her seat to the door
or platform of the car, but simply to assist her to alight. The
husband's request was: "I want you to help my wife off of the
train at Calhoun." The conductor replied that he would do
so. This, in our opinion, meant simply that the conductor
agreed to assist the wife to alight after she had reached the
platform of the car; that in descending from the platform she
would be assisted by the conductor. It is not a promise by
the conductor to leave his other business and go into the car to

assist this passenger from her seat to the platform and down the steps. According to the evidence, the train stopped at Calhoun a sufficient length of time for the wife to have left her seat and gotten to the platform where she would have been assisted to alight by an employee stationed there. She construed the promise of the conductor to mean that when the train arrived at her destination, he would leave his other business, come into the car and assist her from her seat to the platform and down the steps. The promise made, even if it had been binding, did not go to this extent. It would greatly delay the business of the company if it could be held on such a promise that it was the duty of the conductor to go to the seats of all the ladies who had made similar requests and assist them, one by one, to the platform of the car and down safely to the ground. We think that the court erred in charging upon the promise of the conductor as set out in the record, and in refusing to grant a new trial upon this ground.

*Judgment reversed. All concurring, except Cobb, J., absent.*