SOUTHERN RAILWAY COMPANY *v.* HUMPHRIES *et al.*

Under the circumstances disclosed by the record in this case, the verdict of five hundred dollars in the plaintiff's favor was excessive, and the court erred in not setting it aside on that ground.

Argued June 13,—Decided July 31, 1899.

Action for damages. Before Judge Gober. Cobb superior court. September 21, 1898.

*Sanders McDaniel, Hugh M. Dorsey,* and *E. V. Frey,* for plaintiff in error. *Mozley & Griffin,* contra.

Fish, J. Suit was instituted against the Southern Railway Company by W. A. Humphries and his wife, who alleged that

the company had committed a tort in negligently carrying Mrs. Humphries beyond the station to which she had taken passage, and in compelling her to alight at a point in the open country one mile distant therefrom, thus enforcing the necessity upon her of completing her journey on foot. It was developed at the trial that she had taken passage to Oakdale, accompanied by a lady companion, with a view to reaching the bedside of a near relative who was quite ill, and had specially informed the conductor of her mission and of her urgent desire to have the train stopped at the way-station above referred to. Nevertheless she was carried beyond her station, through the inadvertence of the conductor. Upon his attention being called to this fact, he undertook to comply with her request to run his train back to Oakdale, but, after going a short distance, found it impracticable and dangerous to do so, "because there was a freight-train rushing up behind." He accordingly stopped his train at a point in the open country; and, upon being informed by him of the situation, Mrs. Humphries and her lady companion voluntarily arose to leave the train, and without protest permitted him to assist them to alight. As to the manner and conduct of the conductor throughout the entire episode, Mrs. Humphries herself testified: "He was polite to me — courteous to me." The country in the immediate vicinity of the point where the ladies disembarked from the train was hilly and therefore more or less rough and rugged, though the company's track afforded a means of reaching the station over a route quite smooth and comparatively level. Mrs. Humphries, who was more or less familiar with the neighborhood, chose to follow a path leading into the open country, rather than to return to the station by way of the railway-track, because, in view of the approaching freight-train from that direction, she feared it might not be safe to take the latter route. The season was the early part of October; and, according to Mrs. Humphries' own testimony, "the weather was pretty; it was not raining; the ground was dry — perfectly dry." After making their way back to the station, the ladies found that relatives who had met the train with a vehicle in order to drive them to their ultimate destination had already left, being under

the impression that, as the train had not stopped, they were not on board.   Accordingly, Mrs. Humphries was compelled to walk to her brother's house, "between a quarter and a half mile" distant from the station, over a path through the woods, which was quite rough and hilly.   The enforced journey on foot back to the station and from there to her brother's caused her much fatigue, as she was not in robust health, and the day was quite warm.   What is detailed above occurred on Saturday, October 9.   On the following Monday she assisted in nursing her brother, who was dangerously ill, sitting up with him a portion of the night, although, as she testified, during her entire stay at his house she was far from well herself, "not able to sit up, hardly, all the time [she] was there."   On Tuesday, the next day, she walked back to the station over the same path she had traveled in going to her brother's house—she "wasn't able, but [she] walked" nevertheless.   She then took the train to Austell, and, upon arriving at that place, walked from the depot to her own home, a distance between a quarter and a half mile.   She was taken ill immediately upon reaching home, and, according to her husband's testimony, "was confined to her bed, off and on, for a couple of months."   Prior to her visit to her brother's, she had been in extremely poor health—"was in very bad health at that time—feeble at that time."   On her return home, she was "a good deal worse than she had been"; though the testimony appearing in the record before us affords a no less general statement of her condition, nor does it appear what was the character of her illness, or to what extent the fatigue resulting from the walk imposed upon her by the railway company's neglect of duty contributed to or aggravated her sickness, save that she expressed the opinion: "This confinement to my bed and this sickness was caused from this walk I taken over there and this expulsion from the train."   She "did not have to call in a physician on account of this sickness," but did, "all the time," take medicine which he prescribed.   If any expense was thus incurred, the evidence fails to disclose the amount thereof.

Our views as to the case thus presented by the plaintiffs' evidence may be summed up as follows: The jury were, doubtless,

38

authorized to reach the conclusion that the company was guilty of a technical expulsion of Mrs. Humphries from its train, upon the idea that she never really waived her right to complete performance of the company's contract of carriage, and while she left the train without protest at the point selected by the conductor and without being urged by him to do so, yet he offered her no alternative and she merely yielded, gracefully but not voluntarily, to the necessities of the occasion for which the company was wholly responsible. (See Hutchinson on Carriers, § 617, and cases cited.) However, her treatment by the conductor was not in the least degree open to reproach; and accordingly, in the absence of all aggravating circumstances attending such purely technical expulsion, the only recovery, aside from nominal damages, which was warranted was one fairly predicated upon the actual injuries sustained. Of course, the annoyance and inconvenience of being carried past her station and of being compelled to walk back thereto are elements of damage to be considered; and if her enforced journey on foot actually caused, or appreciably contributed to, her subsequent illness, pain and suffering thus entailed upon her should also be duly taken into account. We are not prepared to say that the plaintiffs' proof in this connection was not sufficiently definite to enable the jury to infer that her sickness was in some measure attributable to the fatigue brought about by the somewhat long walk, for one in delicate health, imposed upon her by the company's disregard of duty. But we can not but regard as excessive a verdict of $500, under the peculiar facts of the present case. As will have been noted from the foregoing statement of facts, the jury were not warranted in concluding that the company was wholly responsible for her illness, and therefore chargeable with all the inconvenience, pain, and suffering occasioned her thereby. Presumably they were not of an aggravated or unusual type, for there is no suggestion in this record that the illness complained of was of a serious or malignant nature, or really amounted to more than mere indisposition and partial prostration which one in feeble health ordinarily suffers in consequence of his strength being overtaxed. The jury were bound to take into consideration the probable aggravation of the inju-

rious effects with which the company was legitimately charge-able, caused by Mrs. Humphries voluntarily assuming to further impair her health by sitting up at night and nursing her brother when she was not, and she knew she was not, really able to do so; also, her imprudence, the following morning, in making her journey home, when it involved the same sort of physical exercise on her part which she knew had, a few days before, so fatigued her and caused her distress by reason of the fact that she was in feeble health and unaccustomed to walking over a path in the country which was both "rough and hilly." More especially should the jury have carefully weighed the fact that Mrs. Humphries had previously been "in very bad health," and while, on her return home, she was "a good deal worse than she had been," she had during her brief visit to the bedside of her relative suffered much anxiety and considerable fatigue for which the defendant company was in no sense responsible and which might of itself have been the real, efficient cause of her subsequent sickness. The amount of the verdict returned by the jury leads us to the conviction that they did not have such a firm grasp upon all the important details brought out upon the trial as to enable them to measure, with that degree of nicety and exactitude which the law requires, the character and amount of damages sustained by the plaintiffs. We, therefore, are constrained to set aside their finding, on the sole ground that it was excessive.     *Judgment reversed. All the Justices concurring.*