GEORGIA RAILROAD & BANKING COMPANY *v.* RIVES.

1. While generally it is no part of the duty of the employees of a railway company in charge of a passenger-train to physically assist passengers to alight therefrom, the duty of rendering assistance may arise from special circumstances, such as blindness of an unattended passenger, which is known to the conductor.

2. A petition alleged, among other things, as follows: A conductor of a passenger-train, with knowledge of the blindness of a passenger,

promised to assist him in alighting from the train, but failed and refused to do so. When another passenger undertook to assist him, the conductor refused to let them alight at the usual place and in the usual way, but directed them to go through another car, which was used for baggage and express matter, and the mode of egress from which was more dangerous than that from the ordinary passenger-car. The exit had to be made through a door in such car by going upon a platform which was wet and slippery on account of rain, and which was about on a level with the car door, between which and the platform was an open space. By reason of his blindness, the plaintiff did not know of the peril, and was given no warning of it. He stepped from the door in the usual way, and without negligence on his part, and was caused to fall partly upon the platform and partly into the open space, whereby he was injured. *Held*, that such petition was not subject to general demurrer.

3. Under such facts, if the fellow passenger failed to warn the plaintiff of the danger, it could not be declared as matter of law, on demurrer, that this was such an intervening cause as prevented the negligence of the conductor from being the proximate cause of the injury.

JANUARY 11, 1912.

Action for damages. Before Judge Meadow. Warren superior court. August 30, 1910.

George F. Rives brought suit against the Georgia Railroad & Banking Company, alleging, in brief, as follows: On or about June 16, 1909, he took passage on one of defendant's passenger-trains, for the purpose of going from Sharon to Crawfordville. In order to do this, it was necessary to change cars at Barnett, an intermediate station on the defendant's line. The plaintiff was totally blind and in bad health and helpless. His condition was known to the conductor who helped him get aboard the defendant's train at his starting point. He told the conductor that he would have to be helped to get off of the train at Barnett, which assistance the conductor agreed to render. He was accepted as a passenger and paid full fare. The train consisted of two cars. The one in front was divided into two compartments,— that next to the engine containing seats for passengers, and the other being used as a baggage and express-car. The second car was the regular passenger-car, in which the plaintiff was riding. On reaching Barnett, the train was pulled up to the depot or station sufficiently far for the baggage-car next to the engine to be alongside of the platform, but not far enough for the passenger-car to be beside it. The platform was about on a level with the door of the baggage-car, with an open space about twelve or

fourteen inches wide between the platform and the car. In this position the train stopped. Contrary to his promise, and in violation of the defendant's legal duty to the plaintiff, the conductor and the defendant neglected and refused to render the plaintiff any assistance whatever in alighting from the train. After the plaintiff had waited as long as he thought he could, in order to get off the train and cross over to the other train, he was approached by a passenger who assisted him from his seat to the door of the car. The other passenger and the plaintiff were about to alight from the passenger-car in the usual and ordinary manner, by descending the steps of the car. The conductor, who was standing close by, in the exercise of the defendant's right to designate the doors and steps by which its passengers should leave its trains, directed the other passenger to take the plaintiff through the next car, refusing to allow the plaintiff to alight in the usual manner, and neglecting and refusing to assist him in getting off the train, although requested so to do. The defendant and its conductor knew that the plaintiff was being directed to alight in an unusual manner, attendant upon which were dangers unknown to the plaintiff but known to them, and they refused and neglected to give the plaintiff any notice or warning of such dangers. Unable to see, and not knowing anything about the next car, the plaintiff believed it to be a passenger-car similar to the one in which he had been riding, and he, with the other passenger, acting under the direction of the conductor, entered such car. The compartment into which they entered was full of baggage and express packages. Employees were unloading baggage and packages, and a large number of the passengers were engaged in alighting from the train through the baggage door on the side of the car, which was the only door through which they could leave the car. It was raining; and the hurry of the employees in unloading the baggage and passengers, and the hurry and confusion of the passengers in trying to alight from the train without getting wet, constituted an unusual and disorderly procedure, which defendant knew was going on, and which defendant was bound to render orderly. Plaintiff knew that the car through which he was passing was different from that which he had left, and that something unusual was taking place; but, having received no notice or warning that he was to alight from the train in

any way other than the usual and ordinary one for passengers in alighting from trains and no notice or warning of the dangers to him of the unusual procedure, he was unable to know just where he was or what was taking place. While he and the passenger accompanying him were in the act of stepping out of the baggage-car door on to the depot platform, and while he was exercising all possible caution and prudence which could be used by one in his condition, and just as he had placed one foot on the platform, his foot slipped on the wet surface thereof, and he fell into the space between the platform and the baggage-car. The platform had been rendered very slippery and unsafe to alight upon by the hard rain; and this the defendant knew or could have known by the exercise of reasonable or ordinary care, and it could have rendered the platform safe to alight upon by sprinkling sand thereon. The defendant was negligent in neglecting and refusing to assist him in alighting from the train; in directing him to alight in an unusual and dangerous manner; in failing to warn him of the dangers attendant upon his alighting in the manner directed by it; in allowing the "unorderly" procedure in the baggage-car; in failing to maintain a safe platform upon which to alight; in failing to warn plaintiff of the dangers incident to alighting upon the platform; and in failing to exercise that extraordinary diligence for his safety to which he was entitled. By reason of the fall he has endured much pain and suffering, and has been permanently injured.

By amendment it was alleged as follows: When the plaintiff undertook to step from the baggage-car, he did not know but that he was alighting from the train in the usual and ordinary manner by descending the steps leading from the car door down to the ground, nor did he know that his foot would step on to a wooden platform level with the door of the baggage-car. He therefore undertook to step forward, intending to bring his foot down as he usually alighted from a passenger-car. Under these circumstances his foot came suddenly in contact with the platform, while his heel went down into the space between the car and the platform, causing him to lose his balance and fall partly on the platform and partly into such space.

The defendant filed a general demurrer to the petition. It was overruled, and the defendant excepted.

*Joseph B. & Bryan Cumming* and *James M. Hull Jr.*, for plaintiff in error.

*Alvin G. Golucke* and *James Davison*, contra.

LUMPKIN, J. (After stating the foregoing facts.)

1, 2. In *Southern Ry. Co.* v. *Reeves,* 116 *Ga.* 743 (42 S. E. 1043), it was held that ordinarily it is no part of the duty of the employees of a railway company in charge of a passenger-train to physically assist passengers to alight therefrom; but that the duty of rendering such assistance may arise from special circumstances. A like ruling was made in *Central Ry. Co.* v. *Madden,* 135 *Ga.* 205 (69 S. E. 165, 31 L. R. A. (N. S.) 813), where a sick passenger complained of improper treatment. In *Southern Ry. Co.* v. *Hobbs,* 118 *Ga.* 227 (45 S. E. 23), Chief Justice Simmons, in delivering the opinion, said that there was much respectable authority for the proposition that where a passenger is manifestly aged, infirm, sick, or of defective eyesight, it becomes the duty of the railway carrier to render to him or her such assistance, provided that the servants of the carrier know, or by reasonable attention to their duties, ought to discover the fact of such infirmity. The authorities which he cited fully support the position announced, both by reasoning and by citation of adjudicated cases. In 3 Thomp. Neg. §§ 2845, 2846, 2847, the learned author strongly declares the position, and severely criticises the decisions of some courts. See also Ray on Passenger Carriers, § 67; 2 Shear. & Red. Neg. (5th ed.) § 510; 1 Fetter on Carriers of Passengers, §§ 106, 108; 2 Hutch. Car. (3d ed.) §§ 992, 993. The underlying principle is, that a carrier of passengers is bound to use extraordinary care for their safety in connection with their carriage and discharge; that what such care requires to be done depends on the facts of the case; and that if a passenger is manifestly infirm, sick, or blind, and this is known to the servants of the carrier, or ought to be discovered by reasonable attention to their duties, extraordinary care must be used in the light of such facts.

In *Daniels* v. *Western & Atlantic R. Co.,* 96 *Ga.* 786 (22 S. E. 956), the case was decided on headnotes. It was said that "If, under any circumstances, a railroad company is under a duty to render an infirm passenger physical personal assistance in alighting from a train," yet as the evidence failed to show such a state of facts as would require the rendering of such assistance to the plaintiff,

the verdict was right on the substantial merits of the case, and if the charge complained ·of was erroneous, it did not require a new trial. The reporter's statement of facts shows, that the testimony of the plaintiff was that she was infirm and weak in her hands, on account of rheumatism; that her son helped her on the train, and a colored porter helped her on the car where she rode; and that her son told this porter that she was sick and would need help in getting off the car, and the porter said he would help her. No notice of the plaintiff's condition was given to the conductor. For the defendant it appeared that neither the conductor, his flagman, nor the baggage-master knew anything about the infirmity of the plaintiff. The decision is criticised in 2 Sherman & Redfield on Negligence (5th ed.), § 510, note 4. In *Western & Atlantic R. Co.* v. *Earwood,* 104 *Ga.* 127 (29 S. E. 913), a decision by five Justices, the principle above stated was recognized; but it was held that a voluntary promise by a conductor to aid a passenger in getting off of a railroad car at a certain station did not impose upon the company any liability for a failure of the conductor, after reaching such station, to enter the car and assist the passenger from her seat to the place of exit from such car, where it did not appear that the conductor had notice of any condition of the passenger, or circumstances, which would render such assistance necessary. Here the passenger was alleged to have been received with full knowledge of his blind and unattended condition, and it was alleged that a promise of assistance was given.

3. It was argued that the conduct of the conductor, if negligent, was not the proximate cause of the plaintiff's injury. It was alleged, that the train was stopped with the car used partly for baggage and express purposes and partly for passengers opposite a platform which was about on a level with the door through which baggage was delivered; that the conductor not only failed to render the plaintiff assistance, as he had promised to do, with full knowledge of the plaintiff's blindness, but when a passenger tried to assist the plaintiff to alight in the usual manner by going down the steps of the car in which he was riding, the conductor directed that the plaintiff be carried through the next car, which was the express-car, and from which the only mode of egress was by means of a way surrounded by baggage and pack-

ages, and through an unusual door, upon a slippery platform of unusual height for passengers to alight upon, and with a vacant space between the car and the platform. It can not be said, as matter of law, that if the conductor neglected his duty to assist plaintiff, and, upon seeing a fellow passenger undertake to help him, directed the plaintiff to be carried into a position of greater danger, with no warning or assistance to accomplish a safe alighting, this was not the proximate cause of the injury. Nor can it be declared, on demurrer, that, under such circumstances, the company could escape liability because the fellow passenger, who was aiding the plaintiff, failed to warn him of the peril. No positive act of the other passenger intervened between the negligence of the defendant's conductor and the injury, causing the latter, and breaking its connection with the former.

Several of the decisions cited in the brief of counsel for the plaintiff in error were in cases of injured employees; and none of them are controlling of that now under consideration. The present case is one for submission to the jury, under proper instructions, and the judge correctly overruled the general demurrer.

*Judgment affirmed. All the Justices concur, except Hill, J., not presiding.*