## EDWARDS v. THE STATE.

1. The court having promptly branded as improper the objectionable remarks made by counsel for the State in argument, and instructed the jury to disregard them, and it not being manifest to the Supreme Court that they produced any effect injurious to the accused, although they were calculated to do so, the denial of a new trial on the ground that such remarks were made will not be reversed, no motion having been made by the accused or his counsel to declare a mistrial or to withdraw the case from the jury on account of the objectionable remarks.

2. The newly discovered evidence being cumulative in part, and in part impeaching, there was no absolute right to a new trial because it was not discovered until after the trial.

3. The evidence, though directly conflicting, warranted the verdict; and whilst the finding is not altogether satisfactory to the Supreme Court, there is no legal cause for holding that the trial court abused its discretion in refusing a new trial. *Judgment affirmed.*

August 1, 1892,

Criminal law. Manslaughter. Conduct of trial. Evidence. New trial. Before Judge FISH. Dooly superior court. September term, 1891.

Edwards was indicted for the murder of Abram Westbrook. He was found guilty of voluntary manslaughter; his motion for a new trial was overruled, and he excepted. The motion contained the grounds that the verdict was contrary to law, evidence, etc.; that a new trial should be granted for newly discovered evidence; and that the counsel for the State, in the concluding argument to the jury, said that since the last term of the court in this county twenty murders had been committed, and no one punished. Upon objection of defendant's counsel, the court instructed the jury that the remark of the State's counsel was improper, and that they should give it no consideration whatever.

In support of the ground of the motion as to newly discovered evidence defendant produced the affidavit of Will Marshall who deposed : He was at Poplar Springs church the night Abram Westbrook was killed. About one hour before the homicide Westbrook asked him where Edwards was, and said that he intended to kill him that night or Edwards would kill him. Immediately after the homicide deponent went to where Abram Westbrook was found, and before he got there met Charles Westbrook who told him that Abram had been killed dead as a door-nail. Deponent was there when Henry Shaw came up to where Abram Westbrook was lying. Henry Shaw did not bring any light down to the dead body, but Charles Westbrook brought the light. Henry Shaw did not at any time look for any knife or any other weapon around the dead body. When Henry Shaw came Abram Westbrook's wife was lying down over the dead body, screaming. When Charles Westbrook brought the light, before Henry Shaw arrived, deponent saw the knife lying to the left

side of deceased, about a foot from his left hand. Deceased was then lying on his back. Deponent says he was there when Dave Young and Isaiah Oliver came up; that he heard Charles Westbrook's wife say that the knife was Buster's (deceased). Deponent was there when Mr. Ben Sangster came up. Deponent never communicated what is herein stated either to W. T. Sangster or defendant's counsel until after the trial, and is not related to defendant, deceased or the brother of deceased.

Upon the trial Charles Westbrook testified, among other things, that Abram Westbrook had no weapon at all; that he saw a knife there near deceased's body afterwards on his left side; that he saw the knife there the next day when he came back, but did not see it until the next day; that if this knife had been there where they say it was found, he would have seen it; that it was not his brother's knife, his brother did not have a knife that night; that after his brother was killed Henry Shaw was the first man that got anywhere about him. Charles Grandison testified that he went back there where Abram was the next morning, and if there was any knife there he did not see it. Henry Shaw testified that he went to Abram Westbrook the night of and just after the shooting, and found him dead; that Charles Westbrook brought a lamp there; that he looked around Abram Westbrook and found nothing, did not see any weapon about him, no pistol or knife; that he did not particularly search for weapons, only he looked with all the eyes he had; that he was actually looking for weapons, but did not find any; that he had one of the lamps that was in the church; that he did not see any knife there, but when he went back in about a quarter of an hour he saw a knife there; that Ben Sangster came to him and asked him if he saw a knife there, and he told him he did not; that when he was first there he

had looked on both sides of the body and it was not there then, if it was there he did not see it; that he looked at the same place where the knife was found as near as he could, and did not see any knife there; that Sangster went down there before deponent went back there again, and came back to where deponent was at the church, and told him there was a knife there by deceased.

For defendant there was evidence that both the Westbrooks had knives when they walked up to where defendant was when the shooting took place; that deceased had a knife in his hand; that Charles Westbrook fired first and then defendant fired and killed deceased, etc.; that deceased's knife was found down by his side after he was killed; that David Young first called attention of the crowd to the knife after the killing; and that Charles Westbrook did not have a lamp there while Isaiah Oliver was there, but Isaiah carried the lamp there, so there was a light there when Isaiah got there; and that Charles Westbrook's wife said the knife was Buster's.

Another affidavit, produced in support of the ground as to newly discovered evidence, was the affidavit of Abe Shelton, to the following effect: On the night of the killing he and Henry Shaw went down to the dead body together, Charles Westbrook being a little ahead of them with a light; that when they got there deceased's wife was lying across his body, screaming; that when she got up deponent immediately saw the knife lying to the left side of deceased; that Henry Shaw did not look for any weapon; that Charles Westbrook's wife said that was Buster's knife; that deponent is not related to the parties, and never communicated to the defendant, his counsel or W. T. Sangster what is stated in his affidavit until after the trial; that Henry Shaw did not at any time go over on the side of the log where the dead body was while deponent was there, and did

not have a light at any time while deponent was there at the dead body that night.

Also, the affidavit of Young Daniel to the effect that he was standing about ten feet from the parties at the time of the shooting; that he saw Charles Westbrook take the pistol from Abram Westbrook and shoot at defendant first, and then defendant shot; and that deponent is not related to the parties, and did not state what he knew of the transaction until after the trial. Also, the affidavit of Henry Daniel to a similar effect. Rebutting affidavits were produced, to the effect that Young Daniel was not at the place of the killing and could not have known the particulars concerning it, nor was Henry Daniel, Abe Shelton or Will Marshall. There were affidavits of defendant and his counsel as to their ignorance of the matters set forth in the affidavits produced by them, until after the trial, and the counsel made affidavit that from all they had learned of the character of the parties making such affidavits, they believed them to be truthful negroes.

GUSTIN, GUERRY & HALL and J. W. HAYGOOD, for plaintiff in error.

C. B. HUDSON, solicitor-general, contra.