## MACON, DUBLIN AND SAVANNAH RAILROAD COMPANY v. MOORE et ux.

1. When a railroad company furnishes as the only means of transportation over its road a " mixed train " composed of a passenger-coach and a number of freight-cars, and when on account of the character and construction of such a train it can not start from a station, after stopping thereat, without its movement being attended with a jerk which may endanger the safety of those on board who are unseated, it becomes the duty of the company to use extraordinary diligence in protecting against such danger a passenger who has boarded the train, by stopping a sufficient length of time to give such passenger a reasonable opportunity to be seated. The company is, therefore, liable to the passenger for any injury he may sustain in consequence of its negligence in this particular. It is, on the other hand, the duty of the passenger in such a case to exercise ordinary care in obtaining a seat on the coach ; and if the jolting of the train when starting was unavoidable, after it had stopped a reasonable length of time to allow a passenger to be seated, an injury resulting in consequence of unnecessary delay of the passenger in obtaining a seat will be attributable to his fault, and the railroad company will not be liable therefor.

2. Where a lady passenger is accompanied by a little girl and encumbered with hand-baggage and parcels which she can not unaided place promptly and safely upon the train, and consequently has to procure the aid of another in carrying her baggage aboard, such other person has a right on the train for such purpose, especially when the agent of the company in charge of the train sees the situation of such passenger, offers no assistance himself, and does not object to such assistant of the lady going upon the train. In such a case the fact that the sudden jolting or jerking of the train on starting throws the man accompanying the lady, with a valise, against her and causes him to thus knock her upon the seat whereby she is injured, without fault on the part of either, does not relieve the company from liability.

3. The controlling issues in this case are governed by the above principles of law. These issues were fully and fairly covered by the charge of the court to the jury ; the evidence was sufficient to sustain the verdict ; and even if there was error in any of the rulings and charges of the court complained of, considered in the light of the evidence in the record and of the entire charge of the court, such errors, if any, were not of such a nature as would require or authorize this court to reverse a judgment overruling the motion for new trial, especially as this is the second verdict for the plaintiff that has passed the approval of the court below.

Argued May 17, — Decided July 19, 1899.

Action for damages. Before Judge Smith. Twiggs superior court. September 6, 1898.

*John M. Stubbs, Alex. Akerman, Minter Wimberly*, and *L. D. Shannon*, for plaintiff in error.

*Hall & Wimberly* and *Hardman & Moore*, contra.

LEWIS, J.    Mrs. Mattie A. Moore and her husband brought
suit in Twiggs superior court, against the Macon, Dublin &
Savannah Railroad Company, for injuries alleged to have been
received by Mrs. Moore on a passenger-coach of the defendant
company; these injuries being caused by the train starting, after
she had boarded the same and before she had an opportunity to
be seated, with sudden and violent jerks and jolts, which threw
her against the seat of the car, causing permanent injury to
her person.    It appears from the record that Mrs. Moore had
reached the depot in Danville, Twiggs county, for the purpose
of taking passage over defendant's road to Macon, Georgia.    She
was accompanied by two gentlemen at the home of one of whom
she had been visiting.    She had in her charge traveling with
her a little girl.    She also had hand-baggage and parcels to carry
with her on the train.    The only accommodation furnished
by the railroad company for its passengers over this road was
what is known as a "mixed" train.    The particular train fur-
nished for this purpose consisted of one passenger-coach and a
number of freight-cars.    This passenger-coach had a partition
in it, one end of the coach being set apart for the accommoda-
tion of lady passengers.    When the train reached Danville it
was somewhat behind time, and there was some evidence of
the conductor being impatient to leave.    His attention was
called by one of the men assisting the lady to the parcels and
baggage that had to be gotten on the train, and there was tes-
timony as to his making some impatient remark about being
behind time.    The front end of the passenger-coach, where the
conductor was standing, stopped at a point convenient for this
lady passenger to board the car at that end.    As soon as the
train stopped she entered the car, assisting the little girl on
ahead of her.    One of the gentlemen followed with a valise,
and the other succeeded in placing the parcels or valise he had
charge of on the car, but did not undertake to follow the lady,
owing to the fact that the car had commenced to move off be-
fore he could even escape from the platform.    The portion of
the coach for ladies was the rear half of it, and before Mrs.
Moore reached the partition door, the train started off with
sudden jerks and jolts, which seem to have thrown her against

the partition door, and at the same time to have thrown the man immediately in her rear against her, causing the valise in his hand to strike her, and thus she was knocked down upon the back or arm of a seat. This fall, it is claimed, resulted in the permanent and serious injuries set forth in her petition. The positive evidence of Mrs. Moore and the two gentlemen who were waiting upon her indicated that she used all due promptness and dispatch in making her way to a seat after boarding the car. The only testimony tending to contradict this was that of the conductor, and perhaps that of the engineer, which amounted simply to an opinion that the train had stopped long enough for the lady to be seated before starting. It does not appear that any of the defendant's witnesses observed her after she boarded the car and before she was hurt, nor that they took any accurate account of the length of time the train was at a standstill. There was quite a conflict of evidence on the subject of the extent of the injuries sustained by Mrs. Moore; the testimony in her behalf tending to show that they were of a permanent and very serious nature, and that she had been bedridden for about three years, requiring the constant attention of a physician. On the other hand the testimony of the defendant tended to show that her injuries, if any, were slight, and that her protracted confinement was due to a disease to which she had been subject before she was injured, and not to the fall which she received on defendant's train. The jury returned a verdict in her favor, for $4,000; whereupon the defendant moved for a new trial on various grounds, and excepts to the judgment of the court overruling its motion.

1. This case was here before, and is reported in 99 *Ga.* 229. By the decision then made the first verdict for the plaintiff was set aside and a new trial granted, on account of certain errors in the charge of the court to the jury. In one of the grounds of the motion for a new trial in the present case it is claimed that the court erred in charging the jury as follows: "I charge you that whenever a railroad company undertakes to carry passengers for hire, it is bound to extraordinary diligence, no matter what means of conveyance may be employed to carry the passengers. This standard of diligence applies

as well where the passenger is carried upon a mixed train carrying both freight and passengers." The error assigned by counsel on this charge is as follows: "Without anywhere explaining the difference in the risk incurred by passengers on mixed or freight-trains and those upon regular passenger-trains, or defining in any way, or laying down any rules of law, by which the jury could ascertain the difference between extraordinary diligence used by a passenger on a freight or mixed train and a passenger on a regular passenger-train." We are not aware of any rule of law which under any circumstances requires of a passenger the exercise of extraordinary diligence before the carrier can be held liable for an injury sustained by him, and we are at a loss to know how counsel would have had the court to explain this charge or add thereto by drawing a distinction "between extraordinary diligence used by a passenger on a freight or mixed train and a passenger on a regular passenger-train." This is not a case where one voluntarily takes passage on a freight-train over a road that furnishes regular trains for passengers. The train upon which Mrs. Moore took passage was the defendant's regular passenger-train. It had no other train for passengers. As to those traveling over its road and in their proper places on board its train, it was a carrier of passengers, and it owed to them extraordinary diligence on behalf of itself and its agents to protect their lives and their persons. We think the principle of law charged by the court was therefore clearly applicable to this case, as well as to any other case involving the relative rights and duties of passenger and carrier. We do not mean to say, of course, that a railroad company, if it sees proper, may not use what is known as a mixed train for the purpose of transporting people as well as freight, provided it can be done with reasonable safety to life and limb. But it matters not what the means employed may be, the law always enjoins upon such carriers the duty of extraordinary diligence in protecting passengers; and it would seem that the more dangerous the means employed, the more vigilant and diligent the carrier should be in guarding against injury to passengers. If the construction of the train on which this defendant in error claims to have

been injured was of such a nature, as seems to have been contended in this case, that certain jerks of the train were unavoidable in starting from a station, and these were attended with more or less danger to people on the car who were unseated, then manifestly extraordinary diligence required those in charge of the train to stop at stations a sufficient length of time to enable those desiring to take passage on the train to be seated. If such time has been given, and there has been no unnecessary jolting of the train, or if extraordinary diligence has been used to prevent its violent jerking on starting off, the company has complied with the obligations imposed upon it by law in this particular. On the other hand, it is the duty of the passenger, in boarding such a means of conveyance, to exercise ordinary care and diligence in promptly placing himself in a seat; and if he should be injured on account of unnecessary delay in so acting, without any fault on the part of the company, there can of course be no recovery for such injury.

The controlling issue of fact in this case, so far as concerns the liability of the company for whatever injury the plaintiff sustained, is whether or not the company's agents in charge of the train gave her a fair and reasonable opportunity to be seated before starting from the station where she boarded the car. The charge of the judge bearing upon this point fully and fairly covered the issue. He properly applied the rule of extraordinary diligence which should govern the company in the movement of its trains, and the rule of ordinary care and diligence on the part of the plaintiff in avoiding the consequences of the defendant's negligence. This rule of extraordinary diligence should govern the conduct of the railroad company throughout the existence of the relation it sustains to one of its passengers. It applies to its conduct in receiving, transporting, and discharging passengers. As was held in the case of *Poole* v. *Georgia R. Co.*, 89 *Ga.* 320, if the purchaser of a railroad-ticket "endeavors to get aboard just as the train is starting off, and is injured in consequence of the too hasty starting of the train, which caused the door of the car to close suddenly, it not being securely fastened back, he is prima facie entitled to recover." The controlling fact, as the court stated

in that case, was that sufficient time was not allowed to board the train.   As before indicated, that is really the controlling fact in this case, the principle being somewhat extended on account of its peculiar circumstances; for, although aboard the train before starting, Mrs. Moore was not in a place of safety before being seated, and hence it follows that it was the duty of the defendant to stop a sufficient length of time for this purpose.   In the case of *Chattanooga R. Co.* v. *Hudgins*, 89 *Ga.* 494, it was recognized that the company was bound to extraordinary diligence so far as its duties to its passengers were concerned, in protecting them from injury while coupling a freight-train to a passenger-car.   In that case the injury sued for was sustained by a passenger alleged to have been hurt in this manipulation of a mixed train.   See also *Killian* v. *Georgia R. Co.*, 97 *Ga.* 727.   A passenger who enters such a mixed train, with knowledge of its peculiar structure and movements, assumes the risks consequent upon its unavoidable jerks when starting; and the degree of diligence he should exercise should have reference to such necessary movements of the train.   But he has also the right to rely on an exercise of extraordinary diligence by the railroad company in its management of the train in such a way as to avoid danger of injury to its passengers; and when he has used ordinary diligence for his own safety under the circumstances, the company is liable for damages to him resulting even from its slight neglect.

2. It is further contended, in the motion for a new trial, that the court erred in the following charge: "I further charge you that if you believe that she was injured on defendant's train, by being thrown against the seat, or the back of the seat, and that the proximate cause of the same was that another person, not an employee of the defendant, on the train, struck her with a valise and knocked her down, and for that reason she was hurt and injured, provided you find that she was injured at all, then I charge you that she can not recover, unless it be shown to your satisfaction that such person could not have avoided doing so, and that his doing so was caused by the defendant by violent jolts and jars, or a violent

moving of the train, and that the fault was entirely that of
the defendant, without any fault on the part of Mrs. Moore,
as given you in the other portion of this charge." It was
contended that this language used by the court was erroneous,
because it excluded from the jury the consideration as to
whether or not the person mentioned was rightfully upon the
train, or was himself a passenger thereon. Under the facts
of this case, we think the charge entirely free from error, and
that it is not subject to the criticism made thereon. The
testimony showed that the person referred to by the judge in
his charge clearly had a right to be upon the train while en-
gaged in the simple duty of waiting upon this lady passenger,
when by a violent jerk of the train he was thrown against her.
It appeared that the conductor was present and was obliged
to have seen these people when they entered, and, from a con-
versation which occurred just before the train was boarded, he
must have known the purpose for which the man entered.
In the case of *Suber* v. *G., C. & N. R. Co.*, 96 *Ga.* 42, it ap-
peared that the plaintiff went to the railroad-station for the
purpose of assisting his sister and three small children upon
one of the regular passenger-trains of the defendant. Upon
the arrival of the train he went to the conductor and told him
of his intention, and the conductor saw him preparing to get
on. After seating his sister and the children, the train moved
off before he had an opportunity to get off. As he was about
to step off, the train gave a sudden jerk which caused him to
fall, and he was thus injured. It was held in that case that
it was one for submission to the jury and not for determina-
tion by the court, and therefore that it was error to grant a
nonsuit. This case recognized not only the right of one to go
upon a train to aid, when necessary, dependent passengers in
being safely seated, but also recognized the duty of the com-
pany to give such persons a reasonable opportunity to safely
leave the train. With much more force can it be urged that
such a duty is due by the company to a passenger to give him
an opportunity to be safely located on the train.

3. There were several other grounds in the motion for a
new trial, to a few of which we will call attention in this con-

nection, as the same seem to be most relied upon by counsel for plaintiff in error. It is contended that the court erred in charging that the railroad company was liable for injuries to passengers in the car, caused by sudden or violent jolts of the car in starting or coming to a stop. The objection to this charge was, that it was not accompanied by proper instructions to the jury that such must be unusual jolts or jars for the means of conveyance used at the time. Conceding that the charge objected to was error, abstractly considered, we do not see how the error would have been corrected by giving the further instruction indicated by counsel in his ground of objection, for we can not see how the fact that the jolts referred to were usual or unusual can in any way affect the liability or the rights of the parties. The bare fact that a jolt might have been a usual one would not necessarily relieve the company from liability; and, on the other hand, the fact that it was unusual would not necessarily impose upon it a liability.

It is further contended that the court erred in stating two distinct propositions or rules of law on the subject of contributory negligence and the exercise of ordinary diligence by the plaintiff. To this ground the court certified that in connection with the above charge he also charged the qualification stated in *Americus R. Co.* v. *Luckie*, 87 *Ga.* 6–8. After reading the entire charge of the judge bearing upon these matters, we think the qualification he refers to was duly given to the jury.

There is also a ground in the motion for a new trial, excepting to leading questions propounded to a witness whose depositions were taken by interrogatories. It is contended that this same objection was made, and sustained by this court, when the case was here before; but it was then decided that while this particular objection with reference to leading questions was well taken, the error was not of sufficient materiality to require a new trial. Upon examining this ground of the motion for new trial in the present record, we discover that a number of questions were excepted to in a single ground. We think some of the questions objected to were really not leading, in the first place; and, in the second place, they all seem to relate to matters about which there was no serious contro-

versy between the parties; and hence, if there was any error in the admission of the testimony in answer to these interrogatories, it was immaterial.

There were various other grounds in the motion for a new trial, among them a number claiming that the verdict was contrary to certain specified charges of the court. All these might be considered under the general ground that the verdict was contrary to law and the evidence. There were other grounds complaining of the refusal of the court to charge certain specific requests; but in each one of these instances the judge certifies that no such written requests were made, and he does not recall that the requests were presented in any other shape. As above indicated, the controlling issues of fact touching the liability of the company for whatever injuries the plaintiff sustained, we think, are controlled by the principles of law decided in the first two headnotes; and instead of the verdict being contrary to the evidence in so far as the liability of the defendant is concerned, we think the preponderance of the evidence was with the plaintiff. The contention that her injuries were sustained in consequence of the negligence of the company in starting its train before she had an opportunity to be safely seated was sustained by the positive testimony, not only of herself, but of disinterested witnesses. The evidence of the defendant's witnesses that seemed to contradict this theory was more in the nature of negative testimony. There was very decided conflict touching the extent of Mrs. Moore's injuries, but there was ample evidence in the record to sustain the verdict of the jury that she had been damaged in the sum of $4,000. In the light, therefore, of this entire record, and in view of the fact that this is the second verdict in favor of the plaintiffs that has been approved by the trial judge, while there may be some errors in a few of the rulings complained of, we do not think they are of such a serious nature as to authorize this court to set aside this second verdict in favor of the plaintiffs.        *Judgment affirmed. All the Justices concurring.*