O'NEILL MANUFACTURING COMPANY·v. HARRIS, former·

.constable, for use, etc.

1. In a suit upon a forthcoming bond given in a claim case, the question·
   whether .the property levied upon and claimed is subject to the execu-·
   tion is not involved.
2. In such an action the defendant can not question the legality of the levy.
3. In a suit of this character, the claimant is estopped from questioning·
   the sufficiency of the description under which the property, after the·
   claim case was dismissed, was readvertised for sale under the levy, when
   the advertisement describes the ·property exactly as it was described in
   the levy and in the forthcoming bond.
4. Mere testimony of a constable that he does not know what has become·
   of one of the notices, which he had posted, of the sale of property levied
   upon, is not sufficient to authorize parol evidence of the contents of such.
   paper.
5. Nor is the opinion of such witness, that the places where he posted the·
   notices of the sale of the property were all public places, admissible in
   evidence.
6. The evidence was not such as to authorize the direction of a verdict in.
   favor of the plaintiff.

Submitted July 18, 1906.—Decided February 27, 1907.

Action on bond.   Before Judge Hamilton.   City court of Floyd
county.   September 4, 1905.

This 'was an action brought in the city court of Floyd county,.
upon two forthcoming bonds given by the O'Neill Manufacturing·
Company, as claimant of property which had been levied upon
by Harris, a constable of that county, under executions issued by
a justice's court of Haralson county, in favor of Pursley against.
Clark, which executions had been backed by a justice of the peace
of Floyd county.   The action was in the name of Harris, the con-
stable to whom the bonds had been made payable, for the use of
the plaintiff in execution.   When the suit was brought Harris was
no longer constable, having been succeeded by Byars, and the ac-
tion was brought by the plaintiff as "former constable of said
county."   The case was defended alone by the O'Neill Manufac-
turing Company, the principal upon the bonds, Cothran, the·
surety, who was also sued, having filed no defense.   Upon the trial,.
the court directed a verdict in favor of the plaintiff and against
the defendants for a designated amount.   The O'Neill Manufac-
turing Company made a motion for a new trial, which was over-
ruled, and it excepted.

*Denny & Harris*, for plaintiff in error.

*Griffith & Weatherly* and *C. E. Carpenter*, contra.

COBB, P. J.   (After stating the facts.)

1. The motion for a new trial contained the usual general grounds, and counsel for plaintiff in error, in their brief, argue the question whether the property for which the forthcoming bonds were given was subject to the executions which had been levied thereon, contending that the evidence shows that it was not.   It appeared, from the evidence, that the claim had been dismissed by the justice's court wherein it was pending; and there was nothing to show that it had ever been renewed.   The question of the title to the property was involved in the claim case, but was not involved in the suit on the forthcoming bonds.   The very question which counsel seek to make here was decided in a former suit between the same parties on these same forthcoming bonds.   *O'Neill Mfg. Co.* v. *Harris*, 120 *Ga.* 467.   There the question arose upon a demurrer to the petition, and it was held that "A petition in such a case is not defective in failing to allege that the property in controversy is that of the plaintiff [defendant] in execution."   Mr. Justice Candler, after stating that the ground of the demurrer above indicated was not good, said: "In an action on a forthcoming bond no issue can properly be raised as to the title to the property involved.   The only question to be decided is whether or not there has been a breach of the bond."   He cited *Anderson* v. *Banks*, 92 *Ga.* 121, quoting from the opinion of Mr. Chief Justice Bleckley, delivered therein.   That case was an action upon a forthcoming bond, taken in a claim case, wherein the trial court had granted a nonsuit upon the ground that the property levied upon was not subject to the execution; and it was held that this question was not in the case, that the question of a breach of the bond did not in any way involve the title, but only the forthcoming of the property at the time and place of sale.   "When personal property levied upon under executions is claimed and replevied by the claimant, and at the trial of the case judgment is entered dismissing the claim and ordering the execution to proceed, this is so far an adjudication that the property is subject to the execution as to render the claimant and the surety on the replevy bond liable thereon for a failure to deliver the property to the levying officer at the time and place of sale, he having duly readvertised the prop-

erty for sale after the rendition of the judgment above mentioned, and no second claim having been filed." *Williams* v. *Empire Printing Co.,* 97 *Ga.* 445.

2. Error was assigned because the court admitted the two executions in evidence, over the objections that the same were satisfied by entries of levies, previously made, unexplained, and that the executions had not been entered on the general excution docket of Floyd county, and were not properly backed. In this suit, the defendant could not question the validity of the levies upon the property for the forthcoming of which it had given the claim bonds. In a case of this character, "Neither the legality of the levy nor the authority of the officer to make it is an issuable fact, these issues being concluded by the judgment in the claim case." *Oliver* v. *Warren,* 124 *Ga.* 549. The case just cited is reported in 4 L. R. A. (N. S.), 1020-1023, and in the "Case note" thereto appended it is said: "It is very generally held that an obligor, whether principal or surety, in a forthcoming bond in which a levy is acknowledged, will not be allowed to attack the levy or the authority of the officer making it, in an action upon the bond;" and numerous cases from other jurisdictions, as well as some of our own, are cited to this effect. It follows that the court did not err in the ruling complained of.

3. Error was also assigned because the court admitted in evidence "one of the original advertisements under which it was claimed that the property for which the bonds were given was advertised for sale on the fourth day of January, 1905. The defendant had objected to the introduction of the paper, upon the ground that it was not shown that W. M. Byars had any authority to sell the property;" and because of insufficient description of the property advertised. The advertisement in question was signed, "W. M. Byars, L. C." If any proof were needed of the authority of Byars, as a lawful constable of Floyd county, to advertise and sell the property, it was supplied by his testimony, which was undisputed. The advertisement described the property exactly as it was described in the respective levies under which the forthcoming bonds were given, and exactly as it was described in such bonds. The claimant was clearly estopped from questioning the sufficiency of the description, after having both claimed the property under such description and given bonds for the forthcoming of property

thus described. In this connection see *Garner* v. *Clark*, 115 *Ga.* 666.

4. The court permitted the constable, Byars, "to testify, over objection by defendant's counsel, that he had posted similar notices to that introduced in evidence at two other places," the objection being "that the notices themselves would be the best evidence. The witness testified that he remembered that he had destroyed one of the notices and he did not know what had become of the third one. The court thereupon permitted the witness to testify that he had posted three notices with the same contents as the one introduced in evidence." Error was assigned upon this ruling. Clearly the evidence as to the contents of the paper which had been destroyed was admissible. We think, however, that the loss or destruction of the third "notice" should have been shown before evidence as to its contents was allowed. So far as appeared from the constable's testimony, that paper might still have been posted where he had placed it, and, therefore, easily accessible; and being no longer of use as an advertisement of the sale, it could have been taken down to be used in evidence. Evidence that it could not be found where it had been posted, and that the constable who posted it did not know what had become of it, would have made out a prima facie case of its loss or destruction. But the constable did not testify that he had made any effort whatever to find it. As it did not appear that this paper was inaccessible to the diligence of the plaintiff, evidence of its contents was inadmissible.

5. The court also permitted this witness to testify "that the places where he had posted the three notices were public places," over the objection that the question whether they were or not was one to be decided by the jury, "and that the witness should state the facts and let the court and jury decide whether said places were public places." We think the court erred in this ruling. The question whether the places where the notices had been posted were public places was one for the jury, and not for the witness. It was not a question for opinion evidence, though the witness gave the facts upon which he based his opinion. "The opinion of a witness is not admissible in evidence when all the facts and circumstances are capable of being clearly detailed and described so that the jurors may be able readily to form correct conclusions therefrom." *Mayor of Milledgeville* v. *Wood*, 114 *Ga.* 370; *Southern Mutual*

*Ins. Co.* v. *Hudson,* 115 *Ga.* 638; *Sumner* v. *Sumner,* 118 *Ga.* 590; *Central Ry. Co.* v. *Goodwin,* 120 *Ga.* 83.

6. Even under the evidence admitted, the direction of a verdict in favor of the plaintiff was erroneous. There was no breach of the bond unless the property had been lawfully advertised for sale by the constable. Until the sale was lawfully advertised, there was no legal notice to the obligors in the forthcoming bonds to produce the property. They were obligated to produce the property "at the time and place of sale," that is, at the time and place legally appointed for the sale, and not at any time and place that the constable should see fit to call upon them to produce it. In order for a time and place for the sale to be legally appointed, the sale had to be advertised for ten days before the date set for it to take place, and the advertisement thereof had to be posted, for that length of time, in three public places in the county. Civil Code, §4165. It was not so clearly manifest that all three of the places at which the constable testified that he had posted the notices of the sale were public places, that a finding by the jury to this effect was demanded. This may have been true as to one of these places,— the door in front of the court-house; but as to the other two it was not. One of these last-mentioned places was on a tree, standing at the edge of the sidewalk on Broad street, in the city of Rome, the notice being "posted on the tree facing up the street." According to the witness's testimony, "People passing along the sidewalk or street would not be apt to see it, unless they turned. People going up the street would not be apt to see it." But that tree at that time "was used as a public place." It evidently was so used at that time by the witness, when he posted the notice there, but how or by whom it was otherwise so used he did not say. The third place was "inside the hallway in Douglas's stable," "about eight feet from the front door, just beyond the door that goes into the office." The livery stable fronts on Broad street, "which is the main thoroughfare of Rome." "People passing along the street could see the advertisement in Douglas's stable, but could not read it; they would have to go in to read it." "Douglas & Company conduct a general livery business, buy and sell stock, and board horses, hire out horses, etc." The plaintiff, Harris, testified that this stable was located "in the center of the town, on Broad street, which is the most prominent street in the town;" that "a great

many people frequented it;" that here were large doors "at the front, made out of slats, with holes through them; the doors can be seen through." The stable opened about five o'clock in the morning and closed about ten o'clock at night. It was not a place "where all the people, ladies and gentlemen and children, are accustomed to pass;" but "it is like any other business place in town; people who have business to transact there go in and transact it and come out; they put their horses in there." "A good many people stand around the front of [the] stable on the sidewalk;" and everybody, at one time or another, passes along the sidewalk in front" of it; but the witness did not know what proportion go in. As the evidence did not demand a finding that the advertisement of the sale had been posted at three public places in the county, the court erred in withdrawing this question from the consideration of the jury and directing a verdict in favor of the plaintiff. Besides, unless the mere date on the notice, or advertisement, which was introduced in evidence was presumptive evidence that it and the others, similarly dated, were posted on that day, there was no evidence as to when the notices were posted. The advertisement introduced in evidence was dated eleven days before the date fixed therein for the sale to take place. While we think that the date of the paper afforded presumptive evidence that it was written on that day, we think it questionable whether it can be presumed, from the date of the posted notice, that the posting was done on that day.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent.*