## 1531.  SOUTHERN RAILWAY COMPANY *v.* WRIGHT.

1. The verdict was authorized by the evidence; and the recovery can not be set aside upon the ground that it was excessive, inasmuch as no showing is made that it was induced by prejudice or bias, or by corrupt means.

2. It is the duty of the trial judge, even without request, to check improper remarks to the jury, or improper conduct on the part of any person or persons in the presence of the jury, and to seek, by proper instruction to the jury, to remove any prejudicial effect that such remarks or conduct may have been calculated to have against the opposite party.  But a verdict will not be set aside because of such remarks or conduct, or because of any omission of the judge to perform his duty in the matter, unless timely objection be made at the trial.  In such cases silence will be construed as a waiver of the right to object, or as an admission that the apparently prejudicial circumstance was in fact harmless.

3. An assignment of error based upon the refusal of the trial judge to permit an answer to a question presents no ground for review, unless the answer sought to be elicited is stated to him at the time of the ruling complained of.

4. A ground of a motion for new trial, complaining of admission or rejection of evidence, should be complete in itself or in connection with the exhibits attached to the motion, and should not require reference to other parts of the record, to render it intelligible.  "A mere statement in a brief of evidence that the plaintiff 'introduced in evidence the mortality and annuity tables in the seventieth Georgia Report,' does not authorize this court to take judicial cognizance of the contents of the tables published by the official reporter as an appendix to that volume."

5. It is the duty of the court to inform the jury as to the issues submitted by the pleadings; and this may be done by stating the contentions of both parties as they appear in the pleadings which the jury will have with them in the jury room.  And if any issue has by any means been eliminated, it is the duty of the judge so to inform the jury.  Their attention may be called' to the abandonment of an issue by first stating the original contentions, and then informing them as to what has been abandoned.  And where counsel, in open court, calls the attention of the court to the fact that his client has abandoned one of the contentions raised by the pleadings, and the court acquiesces, the fact that the court has previously stated that the abandoned contention appears in the original pleadings can not prejudice the cause of the defendant, but rather tends to accentuate the plaintiff's abandonment of his position.

6. The duty of extraordinary diligence 'for the safety of passengers, devolving upon a carrier, continues until the passenger has safely alighted from the train; and it is not error so to instruct the jury.  Whether extraordinary diligence requires that a passenger be assisted in alighting is dependent upon the circumstances and conditions surrounding the passenger, and the facts of the particular case.  If, in the exercise of extraordinary care, it should become necessary for the safety of a particular passenger, in an emergency, that the passenger be assisted to

alight, it would then become the duty of the carrier to assist the passenger.

7. In the absence of a timely request, it is not necessarily reversible error for the trial court to omit to charge upon the burden of proof. In a case where complaint is made that no instructions are given as to the burden of proof, the general rule, that he who assigns error must show not only error but that the error was hurtful to him, should be applied.

8. In determining whether a plaintiff is entitled to recover for future pain and suffering, and the amount of such recovery, it is proper for the jury to ascertain, from the evidence, whether the injury which occasioned the suffering is permanent or merely temporary.

Action for damages, from city court of Polk county—Judge Irwin. November 3, 1908.

Argued January 27,—Decided May 18, 1909.

*Maddox, McCamy & Shumate, Trawick & Ault, J. L. Tison,* for plaintiff in error.

*J. M. & H. J. McBride, U. G. Brock, G. R. Hutchens,* contra.

RUSSELL, J. Mrs. Dora Wright brought suit against the Southern Railway Company for $10,000, damages on account of injuries alleged to have been occasioned by the act of an agent or employee of the defendant company in jerking her from one of its passenger-trains. The original petition contained also an allegation that the plaintiff's fall (which was the cause of her injury) was caused by the fact that the stool which was placed at the foot of the car-steps, to aid passengers in alighting, was placed upon rough and uneven ground; but this allegation was abandoned upon the trial. The jury rendered a verdict for the plaintiff, for $3,500; and the defendant excepts to the judgment overruling its motion for new trial.

1. But little need be said as to the general grounds, that the verdict is contrary to the evidence, etc. The evidence in behalf of the plaintiff authorized the jury to find that an employee of the company, in charge of the train and wearing its uniform (perhaps thinking that Mrs. Wright was not leaving the train as expeditiously as was necessary), seized her by the arm and jerked her from the second step of the passenger-coach, whence she fell at full length upon the ground, and that after her fall he made no effort whatever to assist her to arise; that she was seriously hurt, and, as a result of her injuries, has suffered and will permanently suffer great physical pain, from retroversion of the womb and serious internal complaints consequent thereupon.

The plaintiff's evidence as to the cause of the injury was disputed; and evidence was also introduced to show that her present condition was perhaps due to other causes than the fall. The issue of fact thus raised, however, was for the determination of the jury.

It is insisted in the first ground of the amendment to the motion for new trial that the verdict is excessive. As we have already decided, in *Murphy* v. *Meacham,* 1 *Ga. App.* 155 (57 S. E. 1046), and in *Merchants & Miners Trans. Co.* v. *Corcoran,* 4 *Ga. App.* 654 (62 S. E. 130), a verdict for damages can not be held to be excessive unless it be manifestly the result of prejudice or bias, or corrupt motive.

2. In the 4th ground of the motion for new trial it is insisted that a new trial should be granted because of the misconduct of the plaintiff's attorney while addressing the jury, in saying, "There is Dr. McCurdy. He has the appearance of a dope fiend." It is insisted, that this language was not authorized by anything in the testimony, that it was a gross violation of the rules of practice, and tended to prejudice the jury against the witness, McCurdy, and his testimony. Section 4419 of the Civil Code declares: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same; and, on objection made, he shall also rebuke the same, and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if plaintiff's attorney is the offender." This court, while standing for the allowance of the utmost latitude to counsel in proper argument, stands also for a strict enforcement of the above-quoted section of the code. But it must be borne in mind that while the duty of the judge is prescribed in the first portion of this code section, affirmative action on his part is invoked only "on objection made." If improper argument is being indulged and no objection is made by the opposing party, it may be presumed that such argument is at least not *considered* hurtful. Indeed, we have seen many instances in which severe and unwarranted criticism of a party or a witness has reacted against the critic. In our view of the case, as no objection was made in the lower court, the exception to the alleged improper remark of counsel can not be considered. *Metropolitan Street R. Co.* v. *Johnson,* 90

*Ga.* 500 (16 S. E. 49). In that case (p. 505) it was ruled, that "although it is the duty of the trial judge, whether so requested or not, to check improper remarks to the jury, and to seek, by proper instructions to the jury, to remove any prejudicial effect they may be calculated to have against the opposite party, a verdict will not be set aside because of such remarks or because of any omission of the judge to perform his duty in the matter, unless objection be made at the trial." Indeed, in the earlier case of *Young* v. *State*, 65 *Ga.* 525, it was held that when counsel, in argument, travel outside of the case, the attention of the court should be called to it, and a ruling invoked to restrain him, or the attention of the court directed thereto by way of request to charge, but it is too late to raise the point on motion for new trial. See also *Metropolitan Street R. Co.* v. *Powell*, 89 *Ga.* 601 (16 S. E. 118); *Edwards* v. *State*, 90 *Ga.* 143 (15 S. E. 744); *Gress Lumber Co.* v. *Coody*, 99 *Ga.* 778 (27 S. E. 169); *Bowens* v. *State*, 106 *Ga.* 760 (32 S. E. 666); *Smith* v. *State*, 119 *Ga.* 113 (46 S. E. 79); *Odell* v. *State*, 120 *Ga.* 152 (47 S. E. 577). We will remark in passing, however, that as the jury have the right to consider the appearance of the witnesses and their manner of testifying, it can not well be said that counsel in argument, if he desired, might not, as a matter of right, have commented upon the appearance of the witness, though, as a matter of judgment, it may sometimes be very inexpedient to do so. It is the right of counsel to discuss and criticise before the jury the manner of witnesses on the stand; and in most cases this would involve the appearance of the witness.

3. The 5th, 6th, 8th, and 9th grounds of the motion for new trial, which object to the exclusion of testimony, in that the court refused to permit certain questions to be asked, present nothing for our consideration. In each case objection is made to questions asked, and not to evidence elicited by those questions; and the court was not informed what answer was expected, so as to be able to pass upon its relevancy. In the 5th ground it appears that the defendant objected to a question asked of the plaintiff, but inasmuch as it appears that the question was not answered, we are unable to say that an error was committed, or, if there was an error, that it was harmful to the defendant. In the 6th ground error is assigned because the court refused to allow the witness

to answer a question propounded by the defendant's counsel, but. the court was not informed what answer was anticipated, and, consequently, could not determine whether the question would elicit matter relevant to the issues. See *Clay* v. *State,* 4 *Ga. App.* 142 (60 S. E. 1028) ; *Anderson* v. *Savannah Press Pub. Co.,* 100· *Ga.* 455 (28 S. E. 216). The same rule requiring the court to be informed of the probable answer of the witness, where a question is objected to, is applicable to the assignments of error in the 8th and 9th grounds of the motion. The 8th ground is as follows: "Because the court erred in the following ruling. While the witness McCurdy was on the stand he testified as follows: 'The womb is not a delicate organization, and not easily injured as a rule.' The following question was then asked him, and the ruling· of the court made as follows: 'Q. Isn't there doctor, a pretty considerable and respectable portion of your profession that believe the womb is just a bundle of muscles?' Mr. McBride: 'I object to that; in the. first place it is a leading question; and in the next place what his profession think generally is not admissible. They can bring the profession in here and use them as witnesses, but what other people think can not be given by this witness.' The court: 'Now, if you have any medical authority, you might prove it. I think you will have to bring in the proof.' McCamy: 'I think the rule to be just the other way; the doctor can testify as to the opinion of physicians generally. I submit I have the right to ask this witness what a considerable portion of his profession believe about the womb.' The court: 'I think if there. is medical authority, those medical works might be introduced. I rule the question out. You can not go into that.' Movant insists that the testimony was relevant and should have been admitted."

As to the complaint made on the 9th ground, that the court· would not allow the conductor to give his opinion as to the cause of the plaintiff's fall, we can not determine whether the matter· upon which the opinion of the conductor was sought (after having detailed the facts upon which he based that opinion) was admissible, or was inadmissible (as it would have been if the opinion was such a conclusion upon the facts as it was the sole province of· the jury to make) ; for the same reason that prevented the lower· court, either at the trial or upon the motion for new trial, from considering the insistence of plaintiff in error. It does not appear

that at the time of the trial the court was informed as to the answer sought or expected from the witness; and, for the reasons so clearly stated by Judge Atkinson in *Anderson* v. *Savannah Press Pub. Co., 100 Ga.* 455 (28 S. E. 216), we are not able to say whether the ruling complained of was or was not error. While a witness, after stating the facts, may give his opinion, in some instances, as to some facts which might induce a conclusion which the jury is impanelled to reach, he can not supply even a proper conclusion for the jury by the statement of a conclusion of his own. *Milledgeville* v. *Wood, 114 Ga.* 370 (40 S. E. 239); *Thomas* v. *State, 122 Ga.* 151 (50 S. E. 64); *O'Neill Mfg. Co.* v. *Harris, 127 Ga.* 643 (56 S. E. 739); *Robinson* v. *State, 128 Ga.* 254 (57 S. E. 315).

4. Complaint is made in the 7th ground that the court erred in admitting, over the defendant's objection, the mortality tables in the appendix of the 70th volume of Georgia Reports. The plaintiff in error insists that the effect of this error was to exaggerate the jurors' idea of the plaintiff's damages, and that the error assisted the plaintiff in convincing the jury that she was worse hurt than she actually was. The error assigned upon the admission of the mortality tables is, that they were immaterial and irrelevant and illustrated no issue in the case. If we were deciding the point as one of first impression, and could consider the assignment of error as sufficient, we would not hold it to be well taken. If one is entitled to recover for pain and suffering at all, and it is demonstrated by the evidence that the pain and suffering will continue as long as life lasts, it would seem that evidence as to probable duration of life would be admissible to enable the jury to measure, or at least approximate, the total pain and suffering. It is true that this is to be measured only by the enlightened consciences of an impartial jury, but even a jury left, for their admeasurements, to no other tribunal than their own enlightened consciences, having arrived at a valuation of the pain endured for a year, if satisfied that the pain would continue through life, might desire to know the probable duration of that life. And if this measure of computation addressed itself to their consciences, it would be nothing more than equitable to the defendant, either by the use of the annuity table or some similar means, to reduce the tentative finding to its present cash value. We are aware that the Supreme

Court has decided in *Macon, Dublin & Savannah R. Co.* v. *Moore,* 99 *Ga.* 229 (25 S. E. 460), and in *Atlanta & Knoxville R. Co.* v. *Gardner,* 122 *Ga.* 83 (49 S. E. 818), that the mortality and annuity tables are not proper evidence, and that a charge thereon was inappropriate, where there was no proof of value of services or earning capacity. But we are not called upon to decide whether the trial judge erred in the admission of the tables in the present case; for the reason that the motion for a new trial fails to show the contents of the tables. *W. & A. R. Co.* v. *Hyer,* 113 *Ga.* 776 (39 S. E. 447). It has frequently been decided that the ground of a motion for new trial complaining of the admission or rejection of evidence should be complete in itself or in connection with exhibits attached to the motion, so as not to require reference to other portions of the record to render it intelligible; and though the dissenting opinion of the minority of the court in the *Hyer* case, supra, accords with our individual judgments, and it would seem that reference to tables contained in the volumes of our own reports might be the subject-matter of our judicial knowledge, still the exact point was presented in that case and decided to the contrary of our individual views. In that case it was held that "a mere statement in a brief of evidence that the plaintiff 'introduced in evidence the mortality and annuity tables in the seventieth Georgia report' does not authorize this court to take judicial cognizance of the contents of the tables published by the official reporter as an appendix of that volume." This being true, the 7th ground is insufficient to present to our consideration the complaint that the court erred in the admission of tables which are not set out in the motion. As remarked above, however, if we were not bound by the ruling in the *Hyer* case, the effect of our ruling upon the plaintiff in error would be the same; for we would hold that there was no error in admitting the tables, upon the authority of the decision in *Powell* v. *Augusta & Summerville R. Co.,* 77 *Ga.* 192 (3 S. E. 757), in which it was held, that "where there is evidence tending to show that the state of impaired health and diminished ability to labor, attributable to the injury, may endure through life, the mortuary tables are admissible in evidence to aid the jury in dealing with the element of time involved in their computation of the damages." An inspection of the original petition as contained in the record in the Supreme Court in that case

shows that the damages were sought, just as in the present case, as compensation for pain and suffering alone. The same objection to the mortality tables was urged as is now before us. In passing upon this phase of the case, Chief Justice Bleckley, said: "There was such evidence in this case, and the tables were, therefore, relevant. One who is to live long in pain is more damaged than one who has to endure suffering but for a brief term. Test this by applying it to two cases and contrasting them, the first in which pain is to last only for a day, and the second for twenty years. It may be thought that the loss of ability to labor is not pain, but this is a mistake. There is no greater blessing of life than ability to labor, even though the proceeds may belong to another. It is better for happiness, as well as for virtue, to work for nothing than to be idle. A physical injury that destroys the power of a human being to labor is one of the most serious injuries which it is possible to inflict. True, it is not to be measured by pecuniary earnings where the suit is by a married woman, for such earnings, as a general rule, belong to the husband, and the right of action for their loss is in him, but the wife herself has such an interest in her working capacity as that she can recover something for its destruction, and what she is to be allowed ought to be more or less according to the length of time during which her privation is likely to continue. Such privation may well be classed with pain and suffering, especially where it involves the breaking up of established habits. To man or woman accustomed to work, enforced idleness is torture." Under the well-recognized rule that the older of two decisions must control, it would seem to us that if there be conflict between what is ruled in the *Powell* case and the *Moore* and *Gardner* cases, supra, cited by counsel for the plaintiff in error, the latter decisions must yield to the prior adjudication.

5. In the 10th ground of the motion for new trial complaint is made that the court erred in submitting to the jury an allegation of negligence contained in the petition, to wit, that the stool was improperly placed at the steps of the coach, when there was no evidence authorizing the submission of this issue. We do not think that the court was guilty of any error in this respect. The 10th ground is as follows: "Because the court erred in the following charge to the jury: 'Plaintiff alleges that when the train reached

Anniston and stopped at the depot, the agent of the company placed the stool under the steps of the train for her to alight, or for the passengers to alight, and that in placing it they placed it on unlevel ground, and that when she stepped upon the stool it turned and threw her to the ground violently and injured her. (Interposed by plaintiff's counsel: 'I was intending to state to the court that we did not rely upon that ground.') The court 'I was stating the pleadings. The other ground of negligence, gentlemen, is: she alleges further that when she was attempting to alight and was on the second step from the ground, the agent or employee of the company took her by the arm and pushed or pulled her off the steps and violently on to the ground, and that her knee, hip, face, and head were injured and that her womb was injured or displaced, disarranged. Now that briefly states the issues, gentlemen. I do not undertake to give all the words of the petition or plea, but to briefly state the contention of the parties.' Movant says that this charge was error, because it submitted to the jury an issue which was not supported by the evidence, to wit, plaintiff's contention that the stool upon which she alighted was negligently and improperly placed upon the ground, and that this fact assisted in bringing about her injury." It is apparent that the court did nothing more in the excerpt complained of than to state the contents of the pleadings. It is always proper for the trial judge to summarize the contentions of the parties as made by the pleadings, and not less important that he should do this if there has been an abandonment of any of the contentions of either party, or a failure to establish a contention on the part of either; this for the reason that if he first calls the attention of the jury to the original contentions between the parties, and then states that any special position or contention has been abandoned or withdrawn, and therefore should be disregarded, the jury are assisted by having their attention more specially directed to the remaining issues by the process of subtraction; and their vision of the contested issues is clarified by this elimination of issues which have been abandoned or which there has been a failure to prove. In this case the court was proceeding to summarize the allegations of the petition, and the interruption by the plaintiff's counsel, and his statement that the plaintiff abandoned the allegation that she was injured by the improper placing of the stool,

was an incident which withdrew from the consideration of the
jury that allegation of negligence even more forcibly than perhaps
the judge could, as he doubtless would have done, later in his
charge. That the statement of the abandoned ground of recovery
was intended merely as a rehearsal of the pleadings which the jury
would have with them in the jury room, and that it was no doubt
the intention of the judge later in the charge to narrow the issue
to the allegation which was supported by testimony, is evidenced
by the judge's language in proceeding after the interruption, when
he said, "I was stating the pleadings." The entire charge of the
court was not sent up, but it is evident, from the excerpt quoted
above, that the jury could not have been misled or the plaintiff in
error prejudiced by the circumstance of which complaint is made.

6. Complaint is made in the 11th ground that the court
charged the jury that, "under the law, the railroad company is
held to exercise extraordinary diligence in receiving and transport-
ing passengers and in seeing that they are safely alighted from
the train. That degree of diligence is upon them until the pas-
senger has safely alighted from the train,—extraordinary dili-
gence." And further, that the court erred in charging upon the
same subject: "Now the question is, did the railroad company
exercise this degree of care and diligence in seeing that this pas-
senger was properly and safely deposited upon the ground at her
destination?" It is insisted, that by this charge the court held
the defendant to the duty of actually assisting the plaintiff to
alight from the train, and that, under the circumstances of the
case, the defendant did not owe the plaintiff that duty. It is
urged that the court's expression, that the defendant was required
to use extraordinary care in seeing that passengers "are safely
alighted from the train" and "safely deposited upon the ground,"
necessarily includes the idea of actual assistance, and states too
strongly the duty of the defendant carrier to the passenger. In
support of this contention the plaintiff in error's counsel relied
upon the decisions in *Daniels* v. *W. & A. R. Co.*, 96 *Ga.* 786 (22
S. E. 956), and *Western & Atlantic R. Co.* v. *Earwood,* 104 *Ga.*
127 (29 S. E. 913). We do not think that the ruling in either of
these cases is in conflict with the charge of the judge in this case.
It is not decided in the *Daniels* case that there are not occasions
when it might be the duty of a railroad company to render pas-

sengers physical personal assistance in alighting from trains; it was merely held that the circumstances in that case were not such as to call for personal assistance, in the exercise of extraordinary diligence. In the *Earwood* case it was held that if a railroad company has provided suitable and safe means for entering and alighting from its trains, and has stopped its train in proper position to enable passengers to avail themselves of this means, it is not bound to render them personal assistance. It was further held that "the contract of the carrier is that he will carry the passenger safely and in a proper carriage, and afford him convenient and safe means for entering and alighting from the vehicle in which he carries him, but he does not contract to render him personal service or attention beyond that." In the *Earwood* case the damages were attributable to a breach of an alleged contract of the defendant to assist an aged and infirm passenger to alight from the train; and the court very properly held, under the facts of that case, that neither was the defendant informed of the passenger's condition nor was the contract alleged the contract made, even if the promise as made by the conductor was binding upon the company; and the judgment was reversed for the error of the court in charging, in effect, that the promise of the conductor was binding on the company.

As to the charge in the present case, we think, in the first place, that the instruction is not subject to the criticism urged against it, to wit, that he instructed the jury that the defendant was under the duty of assisting this plaintiff to alight from the train. Whether it is the duty of a carrier to assist a passenger from the train, in the exercise of that extraordinary diligence which it is its duty to exercise towards every passenger, must depend upon the particular facts of the special case under investigation. A railroad company is ever bound to use extraordinary care and diligence for the safety and comfort of its passengers. In most instances this would not include assistance in entering or alighting from a train. But the duty of exercising extraordinary care does not terminate until the relation of carrier and passenger ceases; and the relation does not cease until the passenger has at least been discharged. A passenger in alighting from a train, if his destination has been reached and the proper time for leaving the train has arrived, is still as much a passenger as when seated in the coach. Whatever

is necessary to be done for the safety of the passenger, in the exercise of extraordinary care for his safety, must be done as much while the passenger is alighting as while he is pursuing his journey. If a helpless passenger or an intoxicated passenger is attempting to alight, and, by reason of his helplessness or his intoxication, his safety is endangered, it might be the duty of the company, in the exercise of extraordinary diligence toward its passenger, to assist him to alight. Whether such a duty would arise would depend upon whether the circumstances were such as that extraordinary diligence would require that the passenger be assisted. It may be stated as a rule that while it is not necessarily the duty of a carrier to assist its passengers to alight from a train, circumstances might arise, within the knowledge of the carrier, which would require that assistance in alighting be extended, in the exercise of extraordinary care. And whether such circumstances exist as require active assistance is a question to be determined by the jury, in determining whether extraordinary diligence was used. If the charge of the court in this case could be construed as announcing that the carrier was under a fixed duty to assist its passengers to alight in all cases, it would undoubtedly be erroneous, under the principles announced in the *Earwood* case, supra, but plainly the language actually employed could not have conveyed any meaning to the jury other than that the duty of extraordinary diligence for the safety of a passenger continues until the passenger has safely alighted upon the ground. And this is sound law. No harm could have resulted from the instruction; because the plaintiff's recovery, if she is entitled to recover at all, depends upon the fact that she alleges, not that the defendant company failed to assist her to alight, but, on the contrary, that the employee of the defendant actually jerked her violently down off the steps when she was attempting to alight. Under her testimony, if the jury believed it, she would have been entitled to a recovery against the defendant whether it was the duty of the defendant's agents to assist her to alight or not. When the charge criticised is analyzed, it simply amounts to a statement that the defendant was bound to use extraordinary, and not ordinary diligence; and, for this reason, the second criticism, in which it is insisted that the duty of the carrier to passengers in alighting is only ordinary diligence, is without merit. See *W. & A. R. Co.* v.

*Voils,* 98 *Ga.* 453 (26 S. E. 483, 35 L. R. A. 655), and *Macon, Dublin & Savannah R. Co.* v. *Moore,* 108 *Ga.* 84 (33 S. E. 889).

7. In the absence of a timely request, it is not necessarily reversible error for the trial court to omit to charge upon the burden of proof. In a case where complaint is made that no instructions are given as to the burden of proof, the general rule, that he who assigns error must show not only error, but that the error was hurtful to him, should be applied. In the present instance, under the evidence adduced, and in the absence of a request, and bearing in mind that when the plaintiff showed her injury the presumption of negligence on the part of the railroad company was raised, the plaintiff in error should have shown, by the assignment of error, in what respect it was injured by the omission. See *Augusta Southern R. Co.* v. *McDade,* 105 *Ga.* 137 (31 S. E. 420).

8. Complaint is made that the judge erred in charging the jury as follows: "You will determine, from the evidence, whether or not the injuries are permanent, or whether they are temporary injuries. That you will arrive at from the proof in the case. If you find the issue for the plaintiff, and you find the injuries are permanent, there is no rule of law given by which you would estimate damages in a case of this kind. The damages sought to be recovered are for pain and suffering. She alleges that she suffered great pain from the injuries received, and that she will continue to suffer great pain; and that is what she seeks to recover damages for; and, under the law, there is no rule laid down save the enlightened conscience of impartial jurors seeeking for the truth. Under all the evidence in the case, you consider what ought to be paid. Now, after you go that far with the case, you determine whether the injuries are permanent or whether they are temporary injuries." The instruction complained of in this ground of the motion evidently referred only to the character of plaintiff's injuries as to their permanence, or their temporary character, and falls within the rule stated by Chief Justice Bleckley in the *Powell* case, supra. If the plaintiff's injuries were permanent, she was of course entitled to recover more than if her suffering was temporary and ephemeral. If, after determining that the plaintiff had been injured by the fault of the defendant, the jury were satisfied that she was entitled to a recovery of some amount, the

next question which would naturally arise would be, what was a proper amount? This would bring up the question as to whether the injuries were permanent or temporary; and evidently there can be no recovery for permanent pain and suffering, growing out of physical injury, unless the evidence shows that the injury itself is permanent. For this reason we are of the opinion that the instruction complained of was not confusing. It would perhaps have been well to instruct the jury that the question of permanent injury in the case at bar was introduced solely for the purpose of illustrating whether the pain and suffering was likely to continue permanently. As the entire charge was not sent up in the record, we of course do not know what language anteceded or followed the instruction of which complaint is made; but there is nothing in this instruction, when it is boiled down, except that it is the duty of the jury to determine whether the injuries are permanent or temporary; and this inquiry is pertinent where the contention is made that the suffering will be permanent. In other words, the instruction of the judge amounted to the statement: "no injury, no suffering; temporary injuries, temporary suffering; permanent injuries, permanent suffering." The instruction of the learned trial judge, that if the injuries are permanent there is no rule of law given by which you may estimate the damages in a case of this kind, save the enlightened conscience of impartial jurors, etc., evidences that the idea of diminished capacity to earn money was intended to be excluded from the consideration of the jury, and must have been so understood by it.

We conclude that the verdict was authorized both by the law and the evidence and there was no error in refusing a new trial.

*Judgment affirmed.*